803 P.2d 435

The STATE of Arizona, Appellee,

v.

Mario Palma DIAZ, Appellant.

No. 2 CA–CR 89–0289.

Court of Appeals of Arizona, Division 2, Department B.

May 15, 1990.

Reconsideration Denied June 27, 1990.

Petition for Review Granted in Part; Cross-Petition for Review Denied Jan. 23, 1991.*

* Gordon, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

OPINION

FERNANDEZ, Chief Judge.

Appellant was found guilty by a jury of the crimes of transportation for sale of a narcotic drug and wilfully fleeing from a pursuing law enforcement vehicle. He was sentenced to concurrent, aggravated prison terms. We find that the court erred in instructing the jury, and we remand for a new trial.

A department of public safety officer in an unmarked car monitoring traffic with an LR–8 radar unit in Cochise County on U.S. Highway 666 near Dragoon Road observed three vehicles traveling relatively close together on November 7, 1988. He clocked the first two vehicles at 57 miles per hour in the 55–mile per hour zone. The officer stopped the last vehicle, believing that it did not have a current registration tag. After he stopped it, he discovered that it had the proper tag but that it was in the wrong place on the plate. He then pursued the other two vehicles, intending to stop the second one, a green and white Jimmy GMC, and caution the driver about his speed and the fact that the vehicle's over-sized tires would affect the accuracy of the speedometer. The officer also observed that the Jimmy GMC seemed to be sitting low in the rear.

As the vehicles crossed the Cochise overpass, the first vehicle pulled off the road, and the driver jumped out and raised his hood. The officer then activated his emergency lights and attempted to stop the Jimmy GMC. The vehicle accelerated, and a 15 mile high-speed chase ensued that went onto Interstate 10 and through Willcox on the business loop. The GMC was eventually stopped with the assistance of other law enforcement vehicles, and appellant was removed from the vehicle.

When the officer looked in the GMC, he saw, partially covered by a Mexican blanket, several duffel bags and flour sacks that appeared to contain small rectangular objects. The officer drove the vehicle to the sheriff's substation where he removed one of the rectangular packages from a duffel bag and one from a flour sack. He

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Jack Roberts, Phoenix, for appellee.

Robert Arentz, Cochise County Public Defender by Benna R. Troup, Bisbee, for appellant.

slit open the packages and found they contained a substance later determined to be cocaine. The total weight of the packages was 518 pounds; the cocaine had a street value of approximately $44 million.

After he was advised of and waived his *Miranda* rights, appellant told the officers that two men had come to his home in Agua Prieta, Mexico and told him they would kill him unless he drove the GMC to Benson. One of the men who threatened him was known as "El Kaliman." Appellant told the officer who initially interviewed him that he knew there was something illegal in the vehicle, but he did not know what it was. The next day he told another officer that he knew the load was not marijuana but that he knew it was narcotics. Appellant also admitted that he had been arrested in March or April 1988 at the Triple T Truck Stop in Tucson for possession of marijuana. A Pima County deputy sheriff testified that he had arrested appellant as the driver of a car carrying 385 pounds of marijuana. The marijuana was covered by a Mexican blanket.

■ Appellant requested and the court gave a jury instruction on the affirmative defense of duress. He also requested and the court gave Recommended Arizona Jury Instruction (RAJI) No. 4.01, which reads as follows:

> If you decide that the defendant's conduct was justified, you must find the defendant not guilty.

Appellant contends that the giving of the latter instruction constituted fundamental error, arguing that the instruction impermissibly shifts the burden of proof on justification from the state to the defendant and citing *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984). We agree with that contention.

In *Hunter*, a murder case involving self-defense, the court gave the identical instruction given here, even though Hunter did not request the instruction and did not object to the instructions given. The court held that giving the instruction was fundamental error because it impermissibly shifted the burden of proof from the state to the defendant.

■ The state argues that, under the common law, the burden of proving affirmative defenses was on the defendant, citing *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). That argument, however, was rejected by our supreme court in *State v. Cannon,* 157 Ariz. 107, 755 P.2d 412 (1988). The state also attempts to distinguish *Hunter* by arguing that this case involves the defense of duress while *Hunter* involved self-defense. We find no merit to that argument. The burden of proof is the same in self-defense cases as well as in duress cases; it is always on the state.

■ In both *Cannon* and in *State v. Barrios,* 162 Ariz. 146, 781 P.2d 624 (App. 1989), a duress case, the courts determined that the rule in *Hunter* was not applicable because the objectionable language of *Hunter* was not used. Here, the court instructed the jury in a manner that failed to clarify the burden of proof. The court in *Hunter* made it clear that the giving of the general instruction that the state must prove all its case against the defendant and must prove the defendant guilty beyond a reasonable doubt does not sufficiently state the burden of proof on the issue of justification. *See State v. Denny,* 119 Ariz. 131, 579 P.2d 1101 (1978) and *State v. Garcia,* 114 Ariz. 317, 560 P.2d 1224 (1977). Thus, we find that *Hunter* is applicable and that the court committed fundamental error in giving the instruction.

Having determined that the case must be remanded for a new trial, we now consider issues that are likely to recur on retrial.

Both appellant and the state requested that the court give RAJI No. 40.276 on the elements of the crime of transporting a narcotic drug for sale. The court instead gave the following instruction:

> Knowingly transporting for sale or transferring a narcotic drug has two elements:
>
> (1) The defendant must, in fact, have transported for sale or transferred a narcotic drug; and

(2) The defendant must know he is transporting for sale or transferring an *illegal substance.*

'Narcotic drug,' as used above, means among other things, cocaine.

\*　　\*　　\*　　\*　　\*　　\*

'Knowingly' means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

(Emphasis added.) The court reasoned that appellant should not escape criminal liability by maintaining that he did not know exactly what the vehicle contained. The court stated that appellant should not be permitted to avail himself of an alleged mistake of fact about the specific nature of the substance he carried. *See* A.R.S. § 13–204(A).

■■■■ We agree with appellant that the instruction given was improper. First, the court refused appellant's request that it define the term "illegal substance." That term could include innumerable items both within and without the list of drug offenses. Secondly, the statute under which appellant was charged requires the state to prove that the defendant knowingly transported or transferred a narcotic drug. A.R.S. § 13–3408(A)(7); *see State v. Arce,* 107 Ariz. 156, 483 P.2d 1395 (1971). The state is thus required to show that appellant knew that what he was transporting was a narcotic drug, not an illegal substance. That knowledge can be established either by direct or circumstantial evidence. It can be established by showing that appellant was aware of the high probability that the packages contained a narcotic drug and that he acted with a conscious purpose to avoid learning the true contents of the packages. *United States v. Lopez–Martinez,* 725 F.2d 471 (9th Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). Any self-imposed ignorance cannot protect appellant from criminal responsibility.

■■■■ However, we find no merit to appellant's contention that the court erred in denying his motions to suppress evidence, the first motion contending that the officer had no probable cause to stop his vehicle and the second contending that the officer's subsequent warrantless search of the containers found in the vehicle was unlawful. With regard to appellant's first motion, the officer testified that he intended to issue a speed warning and to caution the GMC driver that his oversized tires would affect his speedometer. Therefore, he had probable cause to stop the vehicle. As to appellant's second motion, the state argues on appeal that because appellant had no reasonable expectation of privacy in the contents of the vehicle, he cannot contend that his Fourth Amendment rights were violated. However, the state did not make that argument below and did not present any evidence to support that argument at the hearing on the motion to suppress. We need not address that argument in any event, however, because we conclude the search was lawful under the arguments the state did make below, that because the officer had probable cause to search the vehicle, he was justified in searching every part of the vehicle and its contents. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Reversed and remanded for a new trial.

LIVERMORE, P.J., and LACAGNINA, J., concur.